George NACCI, individually and as Guardian
and next friend of Mark Nacci,
a minor, Plaintiffs,

v.

VOLKSWAGEN OF AMERICA, INC., a New
Jersey corporation, et al., Defendants.

Superior Court of Delaware,
New Castle.

Sept. 28, 1972.

Samuel V. Abramo, Wilmington, for plaintiffs.

Warren B. Burt, of Prickett, Ward, Burt & Sanders, Wilmington, for defendants, Volkswagen of America, Inc. and Volkswagen Aktiengesellschaft.

OPINION

TAYLOR, Judge.

This action is brought on behalf of a minor child for injuries sustained when the

bicycle which the child was riding was struck by a Volkswagen stationwagon. The manufacturer of the automobile, Volkswagen Aktiengesellschaft, (VWAG), a corporation of West Germany, the American importer of Volkswagens, Volkswagen of America, Inc., (VWoA), a New Jersey corporation, and the distributor of Volkswagens for the Delaware area, Volkswagen Atlantic, Inc., a Delaware corporation, have been joined as defendants upon the allegation that the injuries were caused or intensified by the improper design or manufacture of the vehicle. VWAG and VWoA have moved to dismiss under Rule 12(b) for lack of personal jurisdiction over them.

Defendants VWAG and VWoA first entered the scene in this litigation by signing and filing a stipulation with plaintiff extending the time for these defendants to "move, answer or otherwise plead to the complaint". Thereafter, these defendants filed a Motion under Rule 12(b) for dismissal for lack of jurisdiction over these defendants. Plaintiff asserts that the defendants have made a general appearance by the stipulation bearing the caption of this case, signed in their behalf and filed in Court.

Rule 5(aa)(1) of the Civil Rules of this Court provides that appearance (other than by specific notice thereof) is made "by the service or filing of any motion or pleading purporting to be responsive to or affecting the complaint. . . ." The stipulation which is the claimed basis of appearance did not purport to be responsive to or affect the complaint.

Rule 12(b) permits the raising of defenses by the responsive pleading, and alternatively permits defenses, including lack of jurisdiction over the person, to be raised by motion prior to pleading.

Assuming that Rule 5(aa)(1) does not provide the exclusive mode of appearing, has the signing of the stipulation extending the time to answer or plead waived the right of these defendants to raise the de-

fense permitted by Rule 12(b)? The effect of the Civil Rules of this Court and of the corresponding Rules of the Court of Chancery was to abolish the former distinction between special and general appearance. See Abercrombie v. Davies, 35 Del.Ch. 354, 118 A.2d 358 (1955). Prior to the adoption of the current Civil Rules a defendant would have litigated the issue of jurisdiction over the person by entering a special appearance. A general appearance constituted a submission to the jurisdiction. Canaday v. Superior Court, 10 Terry 456, 119 A.2d 347, 352 (1955).

The Supreme Court has stated in *Canaday,* supra, that for purposes of answering or defending under Rule 12(b) there is only one kind of appearance and its nature is such that personal jurisdiction can be litigated. 2A Moore's Federal Practice, p. 2325, Sec. 12.12 states that a voluntary appearance does not waive the defense of lack of jurisdiction over the person.

If defendants had moved under Rule 12(b) at the time provided by the Rules, the defense of lack of personal jurisdiction would have been preserved. It is difficult to justify the proposition that by filing a paper merely postponing the time for filing the motion under Rule 12(b), defendant waived or forfeited the defense whose filing was being postponed. Rule 6 contemplates motions and orders extending time for actions to be taken under the Rules. The stipulation to extend the time was merely an alternative to a motion and order to extend the time. Since defendants were entitled to file a motion to extend the time to answer or move under Rule 12(b), a logical question is: in what manner could they have filed the motion and not be met with the same challenge that is made here? The motion would have required the same signing and filing as the stipulation. Defendants could not have done so by entering a special appearance. Schwartz v. Miner, 36 Del.Ch. 481, 133 A. 2d 599 (1957).

I conclude that by taking the action of changing the time for answering or moving under Rule 12(b), defendants have not forfeited their right to raise a defense permitted under that Rule. See Orange Theatre Corp. v. Rayherstz, 139 F.2d 871 (3 Cir. 1944); Bartner v. DeBiasse, 20 F.R.D. 355 (E.D.N.Y.1957); Kerr v. Compagnie DeUltramar, 250 F.2d 860 (2 Cir. 1957).

Plaintiff also contends that by examining and cross-examining witnesses during depositions, these defendants have entered a general appearance and have waived the defense of lack of personal jurisdiction. After these defendants had filed their motion under Rule 12(b) challenging jurisdiction over these defendants, depositions were taken upon the initiative of a defendant which had appeared and answered. The attorneys for the defendants involved in the present motion were present and examined the defendants. The contention concerning general appearance has been disposed of above. Has this participation in the discovery process nullified the Rule 12(b) motion or waived the right to pursue it?

Plaintiff has cited Fairhope Fabrics, Inc. v. Mohawk Carpet Mills, Inc., 140 F.Supp. 313 (Mass.1956), which held that a defendant by initiating depositions had waived the Rule 12(b) defense of venue. There it was held that waiver arose from defendant's having "availed itself of the power of discovery . . . by taking depositions".

Two circuits have disagreed with the Massachusetts District Court in *Mohawk,* supra.

The Third Circuit speaking through Judge Biggs in Neifeld v. Steinberg, 438 F.2d 423 (3 Cir. 1971), held that the taking of depositions is not a general appearance or waiver of the Rule 12(b) defense of venue. The Seventh Circuit held similarly in Blank v. Bitker, 135 F.2d 962 (7 Cir. 1943). See also, 2A Moore's Federal Practice, p. 2327 Sec. 12.12.

Cases decided under rules dissimilar to ours are of no value. The use of the word "party" in Rule 30, which deals with depositions, is not dispositive of the issue. Rule 30(a) places a restraint on the immediacy of depositions initiated by a plaintiff, while excepting defendants from that restraint.

While there is logic in forbidding a party from proceeding with the merits of a case, while his challenge to the jurisdiction of the Court is pending, the Rules make no such provision. The Rules were designed, in part, to get away from the systematic progression of common law pleading, and the conclusion is that the systematic progression to which I have alluded has given way to a policy of not barring discovery, subject, of course to judicial discretion, even during pendency of issues which might ultimately dispose of the litigation without reaching the merits. 2A Moore's Federal Practice, pp. 2225–6; 4A Moore's Federal Practice, pp. 30–47 to 30–50, 30–60. There is no showing that plaintiff's position in the case has been prejudiced by defendants' participation in the depositions or that plaintiff has been misled thereby.

Rule 12 contemplates defenses by parties, and I find nothing in the Rule to compel an election between participating in discovery initiated by another party and asserting defenses under Rule 12(b). Accordingly, I hold that defendants' participation in depositions which they did not initiate was not a waiver of the Rule 12(b) defense of lack of personal jurisdiction.

Passing to the basic question of whether jurisdiction over these defendants has been obtained for purposes of this litigation.

8 Del.C. Sec. 382(a) provides a procedure for service of process on an "unqualified corporation which transacts business in this State". These defendants have not qualified to do business in this State, and it is not contended that the mechanics specified in the statute for service of proc-

ess were not met, if these defendants are subject to the statute.

"Transaction of business" is defined to mean, inter alia, "the course or practice of carrying on any business activities in this State, including . . . the solicitation of business or orders in this State". 8 Del.C. Sec. 382(b).

A so-called "long arm" statute providing a means of serving corporations not qualified to do business in this State was adopted in 1955. 50 Del.Laws, Ch. 467. Under the 1955 law, the Delaware Supreme Court held in Klein v. Sunbeam Corp., 8 Terry 526, 94 A.2d 385 (1952) that certain statutory exemptions from the requirement that foreign corporations qualify for doing business in this State also applied to service of process upon a foreign corporation. This served to "limit the broad effect of the federal rule." Garden Spot Air Park, Inc. v. Denson Ins. Agency, Inc., 185 A.2d 483, 484 (Del.Supr.1962). The long arm statute was strengthened significantly by amendments in 1961 (53 Del.C.Ch. 265) by making the exemptions referred to above inapplicable in determining whether a foreign corporation is transacting business in this State and by adding a definition of "transaction of business" so that that phrase now includes "the course or practice of carrying on any business activities" or "the solicitation of business or orders." The present section 382(a) and (b) is substantially the same language as the 1955 law with the 1961 amendments, which formerly appeared as 8 Del.C. Sec. 353(a). Folk, The Delaware General Corporation Law, comment on Section 382.

■ In view of this evolution of the Delaware long arm statute, it has been held that a "liberal definition" should govern the application of the current Delaware "long arm" statute. County Plumbing & Heating Company v. Strine, 272 A. 2d 340, 344 (Del.Super.1970); Gantry v. Wilmington Trust Company, 321 F.Supp. 1379 (Del.1970). The liberal concepts of the federal cases which have applied the "long arm" statutes of other states are applicable to the Delaware statute. Crowell Corp. v. Topkis Construction Co., 267 A.2d 613 (Del.Super.1970).

■ The issue is whether the manner of operation of their automobile manufacturing, distribution and sales business by these corporate defendants comes within the liberal concepts of the "long arm" statutes and as such constitutes the transaction of business, the course or practice of carrying any business activities or the solicitation of business or orders in the State of Delaware. It is recognized that some states have adopted a clause extending the "long arm" statute to "tortious acts". Delaware has not so provided. Whether this statutory distinction is of significance in this case will depend on the true nature of defendants' "transactions".[1]

The record does not contain sufficient facts to permit a proper determination of whether the business activities of these defendants subject them to the "long arm" statute of this State for personal jurisdiction.[2] Affidavits and interrogato-

---

1. An illuminating annotation reviewing the holdings under statutes in the various states is found in 27 A.L.R.3d 397–557.

2. Facts which may be relevant to this issue may include: identity of ownership and control of the chain of corporations between manufacture and sale of the product to the public, the actual relationship of those corporations; the contracts establishing the rights and responsibilities of the several corporations with respect to the

franchise, and the distribution of the product; control by each corporation over the business actions of another; the power to cancel the relationship and the duration of the contractual relationship; the exclusiveness of the right to handle the product; the practice or requirement of exclusiveness as between this manufacturer's products and products of other manufacturers; the advertising practices and the control over advertising by the respective corporations; control over the man-

ries and answers have been filed. Because of their conclusory nature and the conflict of fact and conclusion which they create, these cannot serve as the basis for disposing of the issue of personal jurisdiction. Rule 12(d) contemplates that a hearing may be held in connection with certain Rule 12(b) motions. This is available in the case of a motion involving the issue of lack of personal jurisdiction. 2A Moore's Federal Practice, p. 2354, Hartung v. Washington Iron Works, 267 F.Supp. 408 (Mont.1964); Alosio v. Iranian Shipping Lines, S.A., 307 F.Supp. 1117 (S.D.N.Y. 1970).

In view of the importance of the issue under consideration, and since the inter-relationship of a manufacturer to those who participate in the movement of the product to the ultimate consumer is a complex which can be measured according to the statute only after detailed examination, the Court directs that a hearing be held prior to the disposition of this motion for the purpose of establishing the facts having a bearing upon the applicability of the Delaware "long arm" statute to these defendants.

The parties should confer with the Court for the scheduling of the hearing.

ner of sale, prices and services to be provided; control over services permitted or required to be performed or actually performed by each corporation with respect to the movement, promotion or servicing of the product; the relationship of the corporations with respect to the warranty of the product and their relationship with respect to the performance, or reimbursement for performance, of warranty obligations, including contractual obligations of the corporations with respect to defective materials and workmanship.